THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES GORMAN, Appellant.

*Judgment of conviction — when reversed on appeal under Criminal Code, § 527 — erroneous charge not excepted to.*

Upon an appeal from a judgment of conviction it appeared that on the trial the court twice, in the charge to the jury, asserted the existence of a fact which, if true, must have had an important influence upon the minds of the jury when there was in fact no evidence to support such assertion, and also referred to the testimony of a witness, who testified in favor of the defense, in such a way as to inform the jury that in the opinion of the court the testimony given by such witness was false, and asserted that such opinion as to its falsity was " in accordance with common sense, reason and the evidence." No exception was taken to the judge's charge.

*Held,* that if the question of the credibility of such witness was of vital importance to the defendant the judgment of conviction would be reversed under section 527 of the Code of Criminal Procedure, although no exception was taken.

APPEAL by the defendant, James Gorman, from a judgment of the Court of General Sessions held in and for the county of New York, rendered on the 25th day of September, 1894, upon the ver-

dict of a jury convicting the defendant of the crime of assault in the second degree, and also from an order denying the defendant's motion for a new trial.

*Hugh J. Pentecost,* for the appellant.

*John R. Fellows, District Attorney,* and *John D. Lindsay,* for the respondent.

PARKER, J.:

The only exception taken by the defendant upon the trial was to a denial of his motion, made after the People had rested, to take the case from the jury on the ground that there was not " enough evidence to go to them." After a careful reading of the record, we are satisfied that this motion was properly denied by the court.

But, as section 527 of the Code of Criminal Procedure vests in the Supreme Court the power and duty to order a new trial " if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below," certain questions brought to our attention by the counsel for the appellant will be considered.

In August, 1894, Margaret Fitzgerald, a married woman, residing in Bristol, Connecticut, visited New York accompanied by her two children, the elder of whom was between four and five years old. During her stay she was a guest at her brother's house, where the defendant, an old acquaintance of her husband's, frequently visited her.

In the afternoon of August sixth, Mrs. Fitzgerald, accompanied by her two children and the defendant, boarded the steamer *C. H. Northam* on her return journey home. A few hours later the captain of the steamboat hearing a disturbance in stateroom No. 89, which had been assigned to the defendant, hastened to it to learn the cause. He found the door of the stateroom bolted, but succeeded in getting it partly open, when he saw a woman's hand dripping with blood. Summoning assistance the stateroom was entered and the woman found to be suffering from stab wounds on her neck and left hand, the defendant being similarly cut. The officer who arrested defendant within a few minutes after the stateroom had

been opened, testified that the woman in his presence and that of defendant, and in response to an inquiry by the officer, said that " he (meaning defendant) cut me." When asked with what, she answered a razor, whereupon the officer produced a razor blade still wet with blood, and asked her if that was the razor, to which she replied " yes."

The officer further testified that the defendant, on the way to the Chambers Street Hospital, voluntarily said, " I intended to do it," and when asked why, said : " It was a matter of jealousy. I didn't cut her ; she cut me. I did intend to do it." Not until the fifteenth of August was the woman able to get about, and then was brought before a magistrate, and in the presence of the defendant made a formal complaint against him. Upon the trial, however, she testified that her former statement was entirely false, and that the defendant was in no way answerable for the injury which she had received. Her account of the occurrence, then, was that after some general conversation in the stateroom the defendant accused her of being intimate with a cousin of hers, and threatened to tell her husband ; that she asked him whether he believed it, and when he said " yes," she first struck him with a glass, then picked up the razor blade, which she had noticed lying on the washstand when she entered the stateroom, and cut her own neck with it ; that the defendant tried to take the razor away from her, and in the struggle she cut her hand.

If her testimony upon the trial was true, the defendant was not guilty of the crime charged. If, on the other hand, her sworn statement before the magistrate was true, he was guilty. How the jury should find upon that question was, therefore, one of much moment to the defendant. That the woman had been guilty of perjury, upon either one occasion or the other, was beyond question, and she was justly entitled to the censure which the court meted out to her ; indeed, she merited far greater punishment.

But however great her offense against the law, it was the defendant's right to have her testimony weighed by the jury in connection with all the other facts proved, to the end that they should determine upon which of the two occasions she told the truth. The trial court was evidently of the opinion that the witness told the truth before the police magistrate and not upon the trial, and both by

inquiry of the witness and comment on her answers he indicated very strongly to her, and to the jury as well, what his opinion was, as will appear from some quotations which we take from the record :

" By THE COURT. — Q. You lied either in the Police Court or you lied here, didn't you ? A. Yes.

" THE COURT. — Then we have got to find out when you lied. When people admit that they lie, sometimes it is pretty hard to tell when they tell the truth, especially when they swear to lies. * * *

" THE COURT. — You have just said that he cut you. You want to be careful, or you will be tripped up. If you don't tell the truth I will lock you up ; you may be sure of that. The Court will not be trifled with. * * *

" THE COURT.—Is she in the House of Detention ?

" Mr. WEEKS.—No.

" THE COURT.—Then do not let her leave the court room until the case is concluded."

These inquiries and comments by the court are not referred to as furnishing sufficient ground for reversal, but rather because they show the impression which her testimony had made upon the mind of the court, and give emphasis to the portions of the charge to which reference will now be made. The court, in its charge, said : " We find the situation of a person, having complained at the time the person is presented to her, identifying him, going to the Police Court and making a complaint there ; going before the grand jury and making a complaint there ; going to the defendant this morning and appearing upon the stand in this court and making a different statement." And again, " certain it is that she was so coherent in that statement, and it was made in so satisfactory a manner, that a criminal complaint was founded upon it ; and certain it is that subsequently she was in sufficient health and intelligence to go before the grand jury and repeat that statement. It resulted in an indictment which has brought this defendant to this bar."

We are not able to find in this record any evidence that the woman even appeared before the grand jury.

Thus it appears that twice in the charge to the jury the court asserted the existence of a fact which, if true, could have none other than an important influence upon their minds when there was no evidence before the court to support such assertion. Again, the

court, after charging the jury that if they believed she had made a misstatement under oath on one occasion or the other, they would be left in a situation not to believe her, "but, at the same time, if you believe *in accordance with common sense, reason and the evidence* that the story that she now tells is a falsehood, and that the story that she admits having told in the Police Court is the true one, she should not be allowed to humbug you or the court, or trifle with its process, or make a bargain with the defendant, to the end that he may escape the consequences of crime if that be the situation."

If the jury up to this time had been left in doubt touching the view of the court as to how they should find upon this question of vital importance to the defendant, certainly they could doubt no longer, for not only was the opinion of the court thus communicated to them, but the opinion of the court was in effect asserted to be in accordance with common sense, reason and the evidence.

This, undoubtedly, had the effect of causing the jury to feel that they were in some measure at least relieved from the necessity of estimating for themselves the full value of the evidence bearing upon the probable truthfulness or untruthfulness of the evidence of the woman Fitzgerald as given upon the trial, and, therefore, was material error. (*McKenna* v. *People*, 81 N. Y. 360.) We think the charge of the court, in the respects pointed out, presents such error as calls for a reversal of the judgment.

The judgment and order should be reversed and a new trial ordered.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment and order reversed; new trial ordered.

---

NOTE.— The rest of the cases of this term will be found in the next volume, 84 Hun.— [REP.