THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN BROW, Appellant.

*Criminal trial — the jury must determine whether a witness has sworn falsely or was merely mistaken — expression of an opinion by the court — it must state the facts correctly — refreshing the memory by a memorandum — assuming in a question facts not in evidence.*

Upon the trial of an indictment for a felony, it is erroneous for the court to charge, in substance, that either the defendant or a witness for the People upon the trial has perjured himself; the proper course is to leave it to the jury to determine whether one of the witnesses in question was mistaken or whether he had intentionally sworn falsely.

It is improper for the court in its charge to refer to the testimony of a witness in such a way as to inform the jury that, in the opinion of the court, the testimony of the witness was false; a party to an action is entitled to a determination of the jury as to the credibility of a witness, uninfluenced by the opinion of the court.

While instructing the jury, the court must state the facts correctly; and if it is uncertain, under the testimony of a witness, as given in the record, whether he made a particular remark, it is erroneous for the court to assume that he did.

make the remark and then to state to the jury that the remark "meant a good deal."

Upon the trial of an indictment of the defendant for the crime of abducting a female under the age of sixteen years, the defendant controverted the allegation that he had intercourse with the complainant, and that she was under sixteen years of age. A witness called by the People testified that the defendant had admitted the intercourse, but the witness said that, at the time the admission was made, the defendant was joking and laughing, and that he could not tell whether the defendant meant it or not. The defendant testified in his own behalf that what he had said was a joke. The judge in his charge allowed the jury to see that he did not think that the admission was made as a joke.

*Held,* that this informed the jury indirectly that the court did not believe the evidence of the defendant upon this point, and that the remarks of the court were, therefore, objectionable.

Upon the question as to the age of the complainant, a school teacher testified that she knew her; that when pupils came to school she put down their ages in a record, in her possession at the time of the trial, made by her at the time when the complainant first became her pupil; that she was required to keep such a record, and that, independently of the record, she was unable to remember the age of the complainant.

*Held,* that the witness was entitled to look at the record in order to refresh her memory.

It is erroneous to allow a question to be put to a witness which assumes facts not in evidence.

APPEAL by the defendant, John Brow, from a judgment of the Court of Sessions of St. Lawrence county, entered in the office of the clerk of the county of St. Lawrence on the 22d day of February, 1895, upon the verdict of a jury convicting him of the crime of abduction.

*John C. Keeler,* for the appellant.

*Ledyard P. Hale, District Attorney,* for the respondent.

PUTNAM, J.:

The defendant was indicted in the Court of Oyer and Terminer of St. Lawrence county on the 3d day of October, 1894, for the crime of abduction. The indictment charged that defendant, with others, on the 4th day of August, 1894, took, received, employed, harbored and used, and caused and procured to be taken, received, employed, harbored and used, a female under the age of sixteen years, to wit, one Ida Jones, for the purpose of prostitution and for the purpose of sexual intercourse, neither of said defendants being

her husband.   Defendant plead not guilty, was tried separately in the Court of Sessions of St. Lawrence county and found guilty. From the judgment of conviction he has appealed to this court.

Defendant, on the trial, controverted the allegations in the indictment that he had had unlawful relations with complainant, and also that she was under sixteen years of age.

After a careful consideration of the evidence produced by the parties on the trial, and the exceptions taken by defendant to the rulings and the charge of the learned trial court, we have reached the conclusion that the judgment of conviction must be reversed on account of some mistakes in the instructions given by the trial court to the jury and rulings made by him on the trial.   One of the witnesses called by the People was Asa Hawley.   He testified to a conversation with defendant on the day of the alleged abduction, which tended to corroborate the testimony of complainant.   His testimony was contradicted by defendant.   The trial judge in his charge to the jury made the following remarks : " What interest had Mr. Hawley in this case to go upon the stand and tell a falsehood ? Because, gentlemen, one of these two men have done it.   We look at the English language or use it just as it means, and there is not any use of saying to you that one of these men is mistaken ; that is not true ; there is no mistake about it; where an occurrence occurred last August, and one man goes upon the stand and swears positively that a certain thing did occur, and on the other hand another person comes upon the stand and swears that it did not, one of them is telling an untruth.   It is for you to say which one it is. What interest had Mr. Hawley to go upon the witness stand and tell an untruth in this case ?   Has he got any ?   Is he a disinterested witness ?   That is for you to say.   What interest had Mr. Brow in this case ?   You are to take his testimony just the same as any other witness, but it is my duty to say to you, gentlemen, that when he is a witness upon the stand he is a witness who stands here charged with a felony, and you have a right to take into consideration, in determining what weight you will give to his testimony, the fact that he is a witness who is here charged with a crime."

We think the court erred in thus instructing the jury that either Mr. Hawley or defendant in detailing the conversation referred to had uttered falsehood.   He should have allowed the jury to pass

upon the matter.   The jury might well have determined that one of the witnesses was mistaken and not guilty of deliberate perjury. An examination of the testimony given by Mr. Hawley shows that his recollection of the conversation he had with the defendant on the day of the abduction was not clear ; and it is a well-known fact that honest witnesses, in detailing a conversation that occurred months before, often materially differ in their recollections. Hence, the trial court, instead of charging that either defendant or Hawley had upon the trial perjured themselves, should have left it to the jury to determine whether one of the witnesses was mistaken or had intentionally sworn falsely.

Again, in the portion of the charge above quoted, the trial court inadvertently allowed his opinion as to the respective credibility of the testimony of defendant and Hawley to appear.   He did not directly instruct the jury to believe the statement of Hawley and disbelieve that of defendant, but the jury were not left in doubt as to his opinion.   It has been properly held error for a trial court in its charge to the jury to refer to the testimony of a witness in such a way as to inform the jury that, in the opinion of the court, the testimony of such witness was false.   A party to an action is entitled to a determination of the jury on the question of the credibility of witnesses uninfluenced by the opinion of the court.   (*People* v. *Gorman*, 83 Hun, 605 ; *McKenna* v. *People*, 81 N. Y. 360–363.)

The court also used the following language in regard to the same conversation between Hawley and defendant : " If he was down there simply buying blackberries, why did he say to Hawley, if you find he did say so, that he had everything arranged, and that Welch wanted him (Hawley) to go down ?   What was it that was arranged ? That is for you to say.   You remember the response that Mr. Hawley gave ; it may have been a slang phrase, perhaps, but it means a good deal, that he was not ' in it ; ' that is the reply that Mr. Hawley says he made to Mr. Brow.   You are to say, if Mr. Brow made that statement, why did he make it ? "

In so instructing the jury the court did not state the facts correctly.   The witness Hawley, in first detailing the conversation with defendant, testified that defendant said " that Willie Welch wanted him and I to go down there ; I told him I was not in it ; he said he had got things all fixed and Will Welch wanted him and I to come down

there; that is all there is to it." Afterwards, on being further inter-
rogated in regard to that conversation, he corrected his testimony
as follows: "Q. Did you tell him you was not in that kind of busi-
ness? A. I don't remember whether I did or not. Q. Did I
understand you to swear a moment ago that you said to him when
he was talking there that you was not in it? A. Yes, sir. Q. Did
you say that to him? A. I don't remember whether I said those
very words or not." It was, therefore, a mistake on the part of the
court to say to the jury that in the conversation referred to, Hawley
responded to defendant that " he was not in it," and that such
response " means a good deal." The effect of Hawley's testimony
was to leave it uncertain whether he made the remark which the
judge thought meant a good deal.

John and Henry Randall had been called by the People to prove
an admission by defendant to the effect that he (defendant) had
intercourse with complainant at the time of the alleged abduction.
John Randall testified that defendant, at the time he made the
admission, was joking and laughing, and he could not tell whether
he meant it or not. Henry Randall said: "I took it they were
joking together." Defendant testified that what he said to John
and Henry Randall was said as a joke. Hence, the witnesses who
testified in regard to the admission made by defendant of hav-
ing had intercourse with complainant at the time in question gave
evidence from which the jury could have well found that the admis-
sion was a mere remark intended as a joke, and not to be
taken seriously. And the statement of these witnesses in that
regard was not improbable. Would defendant be likely to seri-
ously admit the commission of a felony for which he could be sent
to State prison? The trial judge charged in regard to the admis-
sion as follows: "It has been called out upon this trial that some
few days after this occurred, whatever it was, that Mr. Brow, in his
barber shop, in the presence of three men, admitted that he had
intercourse with this girl down there in the bushes. * * * He
says to-day it was a joke. It is for you to say whether it was a
joke or not; that is the way he puts it. He says it was done in
a joking way; you have a right to say whether it is a subject which
a married man living in the town of Colton would be likely to joke

about." The trial judge evidently thought that the admission was not made in the way of a joke, and he allowed the jury to see what his opinion was. We think his remarks were objectionable for the reasons above stated. In an indirect way he informed the jury that he did not believe defendant's testimony to the effect that what he said to the Randalls about his intercourse with complainant was not intended seriously.

The mistakes above referred to tended to the prejudice of the defendant on the trial and prevented him from obtaining the uninfluenced verdict of the jury on the questions of fact in the case.

One question sharply contested on the trial was as to the age of the complainant. Defendant called Mary Hays, a school teacher, with whom complainant attended school in 1891. The witness testified that she knew complainant and produced a record in her own handwriting of complainant's attendance and the attendance of the other pupils; that she inquired of the pupils their ages when she opened school and set it down in a record. She testified, in substance, that pupils gave their ages when they came to school, and she took their ages and set them down, and that the record produced was a record made by her at the time. The witness afterwards looked at the record and was unable to remember what the complainant told her as to her age, independently of the memorandum. Defendant then offered to read the memorandum in evidence, but the court excluded it. This, we think, was error. The record was an original memorandum kept by the witness, required to be kept by her, and if on looking at it she was unable to remember the fact of the age of complainant the memorandum itself was competent evidence. (*Nat. Ulster Co. Bank* v. *Madden,* 114 N. Y. 280.) The evidence so offered was important, and its exclusion may have affected the result of the case.

We also think the objections to the following questions asked of the witness Hawley should have been sustained: " Q. What answer did you make to the defendant when *he* asked you to go down there; that they had got it all fixed up ? " and, "At the time *he* asked you to go down there was the girl down there with Welch, down the road ? "

The witness Hawley had not testified that defendant asked him to go down there, but that defendant had told him that Willie

Welch wanted him and defendant to go down there. The allowance of the questions by the court, which assumed that the previous evidence of the witness showed a request on the part of defendant to Hawley to go down where the complainant was at the time of the alleged abduction tended to prejudice defendant before the jury.

There are very many other exceptions taken by the defendant to the rulings on the trial and to the charge which we do not deem it necessary to discuss.

For the reasons above stated the judgment should be reversed and a new trial granted.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment of conviction reversed and new trial granted.